IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. BRYANT, | ) | CASE NO. 1:07 CV 2314 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Michael A. Bryant, for supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Bryant had severe impairments consisting of pulmonic valve disease with atypical chest pain, status post repair of ventricular septal defect, and valvuloplasty of pulmonary stenosis.[1] The ALJ determined that Bryant had the following residual functional capacity:

> The claimant has the residual functional capacity to perform work-related activities except for work involving lifting more than 50 pounds occasionally, 25 pounds frequently, work at unprotected heights, work where he would be

---

[1] Transcript ("Tr.") at 21.

exposed to dust, fumes and gases, or work which required lifting the above shoulder level bilaterally (20 CFR §§ 404.1545 and 416.945).[2]

According to the ALJ, the above-quoted residual functional capacity did not preclude Bryant from performing his past relevant work.[3] The ALJ, therefore, found Bryant not under a disability.[4]

Bryant asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Bryant presents two issues for decision in this case:

- Whether the decision errs in its finding concerning residual functional capacity where it fails to discuss the weight given to, or even mention, the opinion of the State agency physician that Mr. Bryant could perform only a limited range of light work?

- Whether the decision errs in assessing Mr. Bryant's blackout spells where it makes no finding concerning the frequency of these spells, despite the fact that frequency was a critical factor in assessing the vocational impact of these spells?[5]

I conclude that the ALJ committed harmless error in failing to identify in his decision and discuss the weight to be given to the residual functional capacity evaluation of the state agency reviewing physician. I further conclude, however, that the ALJ did not properly consider and articulate upon Bryant's blackout spells (syncope) in assessing Bryant's

---

[2] *Id.*

[3] *Id.*

[4] *Id.* at 22.

[5] ECF # 14 at 2.

credibility herein. I recommend, therefore, a reversal of the Commissioner's decision on Bryant's application and a limited remand for reconsideration of the credibility of Bryant's allegations with regard to the intensity, persistence, and functionally limiting effects of his syncope.

## Analysis

**1.     Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

**2.     The ALJ's failure to acknowledge and weigh the opinion of the state agency reviewing physician as to the residual functional capacity**

Malika Haque, M.D., a state agency reviewing physician, supplied the only complete residual functional capacity assessment in the record.[7] Dr. Haque opined that Bryant had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand or walk six hours in an eight-hour workday, and to sit six hours in an eight-hour workday.[8] Her assessment also included postural limitations of occasionally climbing ramps and stairs, never climbing ladders and ropes, and occasionally balancing.[9] Finally, she imposed environmental limitations of avoiding concentrated exposure to extreme heat and all exposure to hazards such as machinery and heights.[10] This assessment is substantially consistent with the examination findings of A.K. Bhaiji, M.D., a consulting examining physician.[11]

Despite this residual functional capacity assessment, the ALJ makes no mention of it in his decision and, accordingly, assigns no weight to it. Although this uncontroverted opinion supports a residual functional capacity finding at the light level with additional

---

[7] Tr. at 169-73. This assessment was reviewed and affirmed by another state agency reviewing physician, Eli N. Perencevich, D.O. *Id.* at 173.

[8] *Id.* at 170.

[9] *Id.* at 171.

[10] *Id.* at 172.

[11] *Id.* at 162-68.

limitations, the ALJ found Bryant capable of medium work with environmental limitations and a restriction on lifting above the shoulder level bilaterally.[12]

The Commissioner concedes that the ALJ committed error in not acknowledging Dr. Haque's assessment and discussing the weight to be assigned to it.[13] The Commissioner argues, however, that this error was harmless because of the following:

- At the hearing, the ALJ propounded to the vocational expert a hypothetical that included light work with environmental limitations and the restriction on working above the shoulder level bilaterally.[14]

- In response to that hypothetical, the vocational expert identified three jobs that according to the Dictionary of Occupational Titles provided a significant number of jobs locally and nationally and incorporated all of the non-exertional limitations included in Dr. Haque's residual functional capacity assessment.[15]

- The ALJ made an alternative finding that "[t]here are other jobs in the national economy which the claimant can perform including assembler, cashier/checker, and fast food worker."[16]

Bryant's counter to this argument is that the error is not harmless because the alternative finding did not include a reference to a significant number of jobs locally and nationally that he could perform at the light modified level. He cites the Sixth Circuit's

---

[12] *Id.* at 21.

[13] ECF # 16 at 12.

[14] Tr. at 281.

[15] *Id.* at 282, ECF # 16 at 13-14.

[16] Tr. at 22. These are the three jobs identified by the vocational expert's testimony.

decision in *Hall v. Bowen*[17] for the proposition that the "significant number of jobs" finding must come from the ALJ, not from a reviewing court.

There is no question that for any one of the three jobs identified by the vocational expert, the number of jobs available locally exceeds the number found sufficient by the Sixth Circuit for purposes of step five analysis.[18] Although this step five finding should be made by the ALJ and not by the reviewing court, in this case I must conclude that the failure of the ALJ to include the magic words "in significant numbers" is susceptible to harmless error analysis. In *Pechatsko v. Commissioner of Social Security*,[19] I discussed at length the proper application of the harmless error doctrine in the context of social security disability cases. After reviewing the applicable authority, I concluded that harmless error occurs where a subsidiary finding is unfounded but the reviewing court is without substantial doubt as to whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture.[20]

Here, the subsidiary finding that Bryant could perform work at the medium level is unfounded and without the support of substantial evidence because the best objective medical

---

[17] *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).

[18] *E.g.*, *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999) (700 jobs within a 70-mile radius of plaintiff's home); *Hall*, 837 F.2d at 275 (1,350 jobs regionally).

[19] *Pechatsko v. Comm'r of Soc. Sec.*, 369 F. Supp. 2d 909 (N.D. Ohio 2004).

[20] *Id.* at 912, quoting *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. 1993) (unpublished table decision), quoting *Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976).

evidence relating to that finding, Dr. Haque's residual functional capacity assessment, is to the contrary and was ignored by the ALJ. Furthermore, the ALJ should have made a complete finding at step five of the sequential evaluation process by including the reference to substantial number of jobs in the alternative finding. Nevertheless, I have no doubt, based on the vocational expert's testimony, that the agency would have made the same ultimate finding at step five even if these errors were removed.

This is not to approve of the errors made by the ALJ in his decision in this case. Nevertheless, I must recommend a conclusion that these errors are harmless.

### 3. Credibility determination as related to Bryant's syncope impairment

This is not to say that the ALJ's credibility finding that Bryant's allegations of the intensity, persistence, and functionally limiting effects of his blackout spells should necessarily have been discounted. The vocational expert testified that such spells would have a limiting effect upon Bryant's employment possibilities.[21] Bryant's counsel proffered additional testimony regarding the intensity and frequency of those blackout spells, but the ALJ refused to receive it.[22] The record contains medical diagnosis of syncope with an onset of November of 2002,[23] which persisted into November of 2005.[24]

---

[21] Tr. at 283-84. Bryant testified about these spells and their effects on him. *Id.* at 270, 272-73.

[22] *Id.* at 285.

[23] *Id.* at 143-50.

[24] *Id.* at 211.

Although there may well be other evidence in the administrative record supporting a discounting of Bryant's credibility as to his allegations of the limiting effects of his syncope, the ALJ did not articulate regarding that evidence.

An ALJ's finding as to credibility is entitled to deference and should not be disturbed absent compelling reasons.[25] An ALJ in a unified statement should explain the credibility finding in terms of the factors set forth in the regulations.[26] The articulation should not be conclusory; it should be specific enough to permit the reviewing court to trace the path of the ALJ's reasoning.[27] Here, however, the ALJ's articulation is conclusory[28] and does not give the reviewing court a meaningful basis to trace the path of the ALJ's reasoning. Although he reviews the medical evidence relating to Bryant's cardiac condition and makes reference to the syncope diagnosis, he does not explain why the evidence justifies discounting Bryant's complaints. In light of the vocational expert's testimony regarding the debilitating impact of syncope on potential employment prospects, the ALJ should have provided some articulation here, and I cannot recommend that his credibility finding has the support of substantial evidence.

---

[25] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

[26] *Id.* at 733.

[27] *Id.*

[28] Tr. at 20.

## Conclusion

Based on the foregoing analysis, I recommend the reversal of the decision of the Commissioner denying Bryant's application for supplemental security income and a limited remand of the decision for reconsideration of the finding as to Bryant's credibility regarding his complaints of the limiting effects of his blackout spells/syncope.

Dated:   October 31, 2008                                        s/ William H. Baughman, Jr.
                                                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[29]

---

[29] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).